**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| JENNIFER LEISE<br>44 Orme Court<br>St. Paul, MN 55116,<br><br>     Plaintiff<br><br><br>       v.<br><br>PERATON, INC.<br>12975 Worldgate Drive, Suite 7322<br>Herndon, VA 20170-6008<br><br>  Serve On Resident Agent:<br>  COGENCY GLOBAL, INC.<br>  250 Browns Hill Ct.<br>  Midlothian, VA 23114-9510<br><br>    and<br><br>PERATON ENTERPRISE SOLUTIONS, LLC<br>f/k/a Perspecta Enterprise Solutions, LLC<br>15050 Conference Center Drive<br>Chantilly, VA  20151-0000<br><br>  Serve On Resident Agent:<br>  COGENCY GLOBAL, INC.<br>  250 Browns Hill Ct.<br>  Midlothian, VA 23114-9510,<br><br>  Defendants. | Case No. 1:24-cv-1009 |

## COMPLAINT

COMES NOW THE PLAINTIFF, JENNIFER LEISE, by counsel, and complains and

alleges against the Defendants PERATON, INC., and PERATON ENTERPRISE SOLUTIONS,

LLC, as follows:

## NATURE OF ACTION

1.    This is a civil action alleging breach of contract, bad faith denial of indemnity,

fraud, constructive fraud, unjust enrichment, and quantum merit.

## INTRODUCTION

2.     This is a proceeding by Jennifer Leise ("Ms. Leise"), an employee of Perspecta Enterprise Solutions, LLC ("Perspecta") who following the acquisition of Perspecta by Peraton, Inc. ("Peraton"), became an employee of Peraton in late 2021.

3.     Perspecta is a subsidiary of Peraton.

4.     On May 18, 2019, Ms. Leise's former employer NikSoft Systems Corp. ("NikSoft") filed a lawsuit against Ms. Leise and Perspecta (the "NikSoft lawsuit").

5.     Perspecta entered into an Indemnification Agreement with Ms. Leise, agreeing to pay for her attorney's fees and costs incurred in defending against the lawsuit.

6.     Perspecta and Peraton have failed to uphold the terms of the Indemnification Agreement, resulting in claims for breach of contract, bad faith denial of indemnity, quantum meruit, unjust enrichment, and actual and constructive fraud.

## PARTIES

7.     Plaintiff Leise is a resident of Minnesota and is employed by Defendant Peraton in Eagan, Minnesota.

8.     Defendant Peraton is a company that specializes in space, intelligence, cybersecurity, defense, homeland security, citizen security, and healthcare, with its headquarters at 12975 Worldgate Drive, Suite 7322, Herndon, Virginia 20170-6008.  Peraton is a government contractor.

9.     Defendant Perspecta is a Delaware corporation with its principal place of business at 15050 Conference Center Drive, Chantilly, Virginia 20151-0000.  Following its acquisition by Peraton, Perspecta changed its name to Peraton Enterprises Solutions, LLC.  This Complaint

refers to "Perspecta" throughout.

## JURISDICTION AND VENUE

10.     The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

11.     Defendants are present in and regularly conduct affairs and business activities in the Eastern District of Virginia.

12.     Defendants Peraton and Perspecta are registered to do business in, are in good standing in, and maintain an office in the Eastern District of Virginia.

13.     The causes of action alleged in this Complaint arose in the Eastern District of Virginia.

14.     This Court has subject-matter jurisdiction over Ms. Leise's claims under the diversity of citizenship provisions in 28 U.S.C. § 1332(a)(1).

15.     Venue over Ms. Leise's claims is proper under 28 U.S.C. §§ 1391(b)(1) & (2).

## BACKGROUND

16.     Ms. Leise worked in a classified U.S. Postal Service ("USPS") government facility as a cybersecurity specialist in Eagan, Minnesota, initially for Northrup Grumman.

17.     When Northrup Grumman's contract was ending, NikSoft Systems Corporation hired Ms. Leise to perform the same services she had been performing for Northrup Grumman.

18.     Ms. Leise's performance was outstanding, yet she learned she was not being paid equivalent to her male counterparts.  Ms. Leise requested that she be brought current with her male counterparts.  Instead of providing a raise – which NikSoft was perfectly capable of doing under the contract – NikSoft placed Ms. Leise's position out to bid, which meant the other four government contractors had equal opportunity to secure the position with their own employees,

thus placing Ms. Leise's position and career in jeopardy.

19.     Ms. Leise therefore resigned and was hired by Perspecta Enterprise Solutions LLC.

20.     NikSoft then, in retaliation for Ms. Leise asserting her civil rights, immediately filed suit against Ms. Leise asserting Ms. Leise violated her Confidentiality, Intellectual Property, Non-Competition, and Non-Solicitation Agreement ("Non-Compete Agreement") with NikSoft in going to work for Perspecta.

21.     NikSoft filed suit in Minnesota and when that lawsuit was dismissed, NikSoft filed in Fairfax County, Virginia, asserting four claims against Ms. Leise and five against Perspecta.

22.     Ms. Leise retained the firm of Charlson Bredehoft Cohen Brown & Nadelhaft, P.C. ("CBCBN") to represent her in the suit on December 16, 2019.

23.     Recognizing that Ms. Leise could not afford representation by CBCBN, and that Perspecta's success in the litigation was largely dependent upon Ms. Leise's success in the litigation, Perspecta entered into a Confidential Indemnity Agreement (the "Indemnification Agreement") with Ms. Leise in late January/early February 2020, agreeing to pay for her attorneys' fees and costs.

24.     A condition of Perspecta continuing to pay for Ms. Leise's attorneys' fees and costs incurred in defending against the NikSoft litigation, was that Ms. Leise remain employed by Perspecta.

25.     In or about May 6, 2021, Peraton acquired Perspecta and Perspecta became a wholly-owned subsidiary of Peraton.

26.     Ms. Leise and Perspecta also entered into a Joint Defense Agreement.

Perspecta/Peraton is/was represented in the litigation by Paul Kennedy as lead counsel.  Mr. Kennedy is and was a partner with the law firm of Littler Mendelson P.C. ("Littler").

27.     Ms. Leise is/was represented by Elaine Charlson Bredehoft, as lead counsel, and Adam Nadelhaft, both partners in CBCBN.

28.     Counsel for Peraton/Perspecta and Ms. Leise worked well together throughout the litigation.  Littler held the legal communications with Perspecta/Peraton primarily through Perspecta's General Counsel, John "Jay" Johnston ("Mr. Johnston"), with assistance from its Assistant General Counsel, Chaia Morgan ("Ms. Morgan").   Ms. Leise's counsel took direction from Littler with respect to the litigation decisions throughout, including the division of labor as to research, briefing, motions, pleadings, depositions, other discovery, trial and appeals.

29.     At no time during any of the litigation did Perspecta or Peraton consult with Ms. Leise or her counsel as to strategy, costs or any factors to be considered in any settlement negotiations.

30.     The NikSoft litigation began in the months leading up to COVID.   At that time, trials in Fairfax Circuit Court moved expeditiously, with trials generally going forward within 12 months of the date of filing.  Therefore, the parties anticipated that if they were unable to settle, trial would be completed in 2020. Because of COVID, the case spread out over close to four years, which necessarily increased the fees and costs substantially over expectations.

31.     Initially under the terms of the Indemnification Agreement, the reimbursement of Ms. Leise's attorney's fees and costs incurred by CBCBN were limited to $100,000, with CBCBN providing notice when exceeding $80,000, and an extension of the cap by $50,000, subject to a budget proposal.  The Agreement then provided that any subsequent extensions would follow the same procedure, of submitting a budget of anticipated fees for "review and

approval, which shall not be unreasonably withheld."

32.     This process was followed, with the first $250,000 being approved in $50,000 increments.  Thereafter, Perspecta requested the submission of a CBCBN "budget" of the anticipated fees in the form of providing monthly estimates and/or submitting the monthly invoices for review and approval, to specifically designated individuals. This was accomplished completely separately from Littler, and Perspecta provided Ms. Leise's counsel at CBCBN with a designated individual with whom to communicate respecting payment of fees and costs under the Indemnification Agreement.

33.     As COVID progressed, Perspecta experienced many changes to its personnel – including in-house counsel with whom CBCBN had contact for the budgets and invoices.

34.     CBCBN submitted estimates when requested, and submitted invoices to the designated individuals throughout, all of which were paid in full by Perspecta/Peraton without any issues or complaints as to the billing procedures, processes or amounts.

35.     Perspecta/Peraton paid all the invoices from January 31, 2020 through June 30, 2023.

36.     At one point in April 2023, after having not been paid some of the invoices for a lengthy period of time, at the suggestion of Littler, Ms. Leise's counsel reached out to Mr. Johnston.

37.     The April 23, 2023 email to Mr. Johnston laid out the history of the process and individuals involved, including Perspecta/Peraton's direction to communicate with specific individuals and to submit the invoices.  At the end of the email to Mr. Johnson, Ms. Leise's counsel wrote:

> If you would like us to follow another procedure going forward, we are happy to do so.

6

38.     Mr. Johnston did not respond with any other process Perspecta preferred, or express any concern at the way the process had been handled up until then – over the past 3+ years.  Instead, Perspecta brought current its payment of CBCBN invoices and continued the same process and paid the CBCBN invoices through June 2023.

39.     On July 17, 2023, the case went to trial.

40.     In the strategic preparation for trial, Littler asked Ms. Leise's counsel to take the lead in the trial, from *voir dire* through closings.  Thus, as with most of the motions practice and discovery throughout the case, Ms. Leise's counsel's preparation for and participation in trial was extensive and much more time-consuming than Littler's.  Littler also requested that Ms. Leise's primary paralegal (at CBCBN) be present throughout the trial and handle the electronic trial exhibits and other related matters.

41.     By the time trial approached, Ms. Bredehoft, who had been involved in a time-intensive high-profile case for some of the four years of the litigation, and had experienced a serious medical emergency thereafter, was back and at full speed, and it was determined that she would serve as lead counsel for the pre-trial and trial.

42.     Peraton's Assistant General Counsel, Chaia Morgan, attended the full trial and was very complimentary of counsel for Ms. Leise.  At no time did Ms. Morgan express any concern about the staffing or conduct of the trial by Ms. Leise's law firm, CBCBN.

43.     Ms. Morgan was introduced to the jury as the representative of Perspecta for purposes of the trial.  Ms. Morgan was not a key player/client for Perspecta during the litigation – the Perspecta key players/clients were Mike Libby and Mark Bruininga, and the primary contact through the counsel's office was Mr. Johnston.

44.     During the trial, Ms. Morgan also responded to Ms. Leise thanking her (on behalf

of Perspecta and Peraton) for paying Ms. Leise's fees and costs, and Ms. Morgan assured Ms.

Leise that Perspecta and Peraton paying her legal fees and costs was the right thing to do and that

they were honored to support her.

45.     The Indemnification Agreement was provided in discovery to NikSoft and was

introduced into evidence at the trial.  It was Perspecta/Peraton's perspective that this was helpful

to them in showing they backed their employees and had helped defend Ms. Leise against

NikSoft, who was bullying her for standing up to NikSoft on important civil rights issues.

46.     At no time did Perspecta/Peraton tell Ms. Leise, Ms. Leise's counsel, or the Court

or the jury that it had no intention of paying any of her fees and costs for trial and thereafter.

47.     In fact, Perspecta/Peraton explicitly represented to the Court, the jury and Ms.

Leise, by offering into evidence a redacted copy of the Indemnification Agreement which

omitted the limit–notice-budget provisions, that Perspecta/Peraton was taking full responsibility

for Ms. Leise's attorneys' fees and costs in defending against NikSoft's claims against Ms.

Leise.

48.     Meanwhile, Perspecta/Peraton knew it did not intend to pay Ms. Leise's

attorneys' fees and costs and knowingly misrepresented the facts to Ms. Leise, the Court and the

jury—all when it had a present intent not to pay those fees and costs.

49.     Ms. Leise relied upon Perspecta/Peraton's material misrepresentations and

omissions to her detriment.  Among other things, if Perspecta/Peraton had disclosed their intent

not to pay, Ms. Leise could have limited CBCBN's role in the trial (for example, so that Ms.

Bredehoft did not serve as lead counsel, for Perspecta/Peraton's benefit) and made additional

efforts to resolve the case directly with NikSoft.

50.     On July 31, 2023, the jury rendered a verdict, finding in favor of Ms. Leise as to

Counts I, II, III, and V—all of NikSoft's claims against her.

51.     The jury found in favor of Perspecta/Peraton on Counts III and V, and against Perspecta/Peraton on Count IV and awarded damages to NikSoft in the amount of $52,000.

52.     Earlier in the day on July 31, 2023 – after the jurors had suggested they might be unable to reach a unanimous decision – NikSoft made a demand to settle with Perspecta/Peraton. Perspecta/Peraton – again without requesting or discussing any input from Ms. Leise – rejected the settlement offer and made no counter-proposal for settlement.

53.     After the verdict, Perspecta/Peraton expressed – through their counsel at Littler – that they considered the jury verdict a significant victory for Perspecta/Peraton.

54.     After post-trial motions, all of which were denied, NikSoft appealed the verdict.

55.     Notwithstanding the substantially successful defense against NikSoft, Perspecta/Peraton stopped paying Ms. Leise's attorneys' fees and costs as of July 1, 2023—the month of the trial.

56.     Once the trial bill was submitted, on information and belief, it was elevated to Mr. James M. Winner, the Chief Legal Officer, General Counsel for Peraton ("Mr. Winner").

57.     Upon information and belief, Mr. Winner instructed Perspecta/Peraton to pay nothing further to Ms. Leise's counsel – not one cent - while simultaneously instructing Perspecta/Peraton to continue to pay the Littler legal bills in full.

58.     Also upon information and belief, Mr. Winner further instructed Perspecta/Peraton not to speak with Ms. Leise's counsel; not to tell Ms. Leise or her counsel that Peraton/Perspecta had no intention of paying anything further; and to provide no rationale for failing to pay Ms. Leise's legal fees and costs for July 2023 (the month of the trial), or any of the legal fees and costs following.

59.     For eight months, Perspecta/Peraton refused to pay any of Ms. Leise's legal fees and costs and failed to inform Ms. Leise or her counsel that they were refusing to pay, instead dragging out any response at all, until Ms. Leise finally urgently forced the issue because NikSoft had appealed the adverse verdict, and the appellate briefs were coming due.

60.     Significantly, during that eight-month period, Perspecta/Peraton: 1) never raised any issue about any item in any of Ms. Leise's counsel's invoices over the period July 2023-Februry 2024 though repeatedly invited to do so by Ms. Leise's counsel, if any issue existed; 2) never asserted Ms. Leise was in breach of the Indemnification Agreement – other than assuring Ms. Leise and Ms. Leise's counsel they would honor the Indemnification Agreement (which they would not have said if they believed there was a breach); and 3) never gave Ms. Leise or her counsel a date on which payment would actually be made.

61.     This directive by Mr. Winner not to pay and not to communicate with Ms. Leise or her counsel, while paying Littler, made no sense for many reasons:  1) Ms. Leise was 100% successful in her defense against the NikSoft Lawsuit; 2) Perspecta/Peraton expressed that it believed it was substantially successful in the litigation – particularly in light of what it perceived to be outrageous demands for settlement by NikSoft; 3) Ms. Leise's counsel served as lead counsel and Perspecta/Peraton reaped the benefits of that representation; 4) Perspecta/Peraton benefited from the jury and Court believing they were generous and supportive of their employee who clearly could not afford to pay for her legal fees and costs and was being bullied because of advocating for important civil rights; 5) it was contrary to the Indemnification Agreement; and 6) refusing even to communicate with Ms. Leise's counsel, much less provide *any* reason for not paying for eight months, after having paid all the fees and costs without question for three-and-a-half years, defied logic, common sense, common courtesy, and professional norms.

62.     On information and belief, the only plausible explanation for Mr. Winner's direction to Perspecta/Peraton not to pay Ms. Leise's legal fees and costs from the trial through any further litigation – and not to tell Ms. Leise or her counsel, provide any reason, or speak with her counsel -- is because Ms. Leise is female and her lead counsel for trial and following trial is female.  This is in contrast to Perspecta's key client representatives – all male - and Perspecta's lead counsel – also male.

63.     Ms. Leise's counsel reached out multiple times from September 2023 through February 2024 to inquire about payment of the invoices, ask if there were any issues, and welcome dialogue if there were any questions or issues.

64.     Peraton's employee responsible for approving and paying the invoices directed Ms. Leise's counsel to Ms. Morgan.  Ms. Morgan assured Ms. Leise's counsel on multiple occasions that she would get on it and respond to her shortly (e.g., the next day, later in the week), and never did.  Ms. Morgan then simply stopped responding at all to Ms. Leise's counsel's inquiries.

65.     On February 20, 2024, Ms. Leise's counsel contacted Perspecta's General Counsel, Mr. Johnston, for assistance in obtaining payment.  As Ms. Leise's counsel pointed out, this was an extremely burdensome debt for a firm of their small size to carry, especially for such a lengthy a period of time. There was no response from Mr. Johnston to this email.

66.     Ms. Leise's counsel then sent a follow-up email to Ms. Johnston on March 8, 2024, again requesting payment of the prior invoices and reminding Peraton of their obligation to pay Ms. Leise's attorneys' fees. Again, no response.

67.     Ms. Leise's counsel sent another follow-up email, as there had been no word from Perspecta/Peraton, and no payments for 8 months.

68.     On March 18, 2024, Perspecta/Peraton, while continuing to assert that they would honor their obligations under the Indemnification Agreement, raised for the first time some scattered and non-specific criticism of unspecified entries from the 116-page July 2023 invoice – eight months after receiving it and having never responded to Ms. Leise's counsel's multiple efforts to communicate and welcome any issues or questions, and still while not paying any portion of the July invoice or any of the subsequent invoices.

69.     At no point over the four years of the litigation had Perspecta/Peraton ever provided any billing guidelines or restrictions, nor had it disapproved *any* time entry contained in any of Ms. Leise's counsel's invoices, other than the Indemnification Agreement's initial limits and budgets, which it had voluntarily and explicitly waived and relinquished.

70.     Within 48 hours of receiving these non-specific, generic eight-months late criticisms, Ms. Leise's counsel went through all the unpaid, extensively-detailed invoices, and in good faith attempted to address the non-specific criticisms by providing updated, highlighted modified invoices with a substantial reduction (over $75,000) in the amount.

71.     Because NikSoft's appellate brief was due near the end of the week of March 18, 2024, Ms. Leise's counsel requested immediate payment to bring Perspecta/Peraton current.

72.     After being reminded of the current status of both NikSoft's and Ms. Leise's appeals, and the significant financial burden CBCBN had suffered from lack of Perspecta/Peraton's nonpayment, Ms. Morgan confirmed that "The company intends to indemnify Jennifer pursuant to the terms of our agreement with her in this matter."  Yet Perspecta/Peraton still did not pay a cent.

73.     Following this communication, Ms. Morgan deemed it appropriate to reach out to Ms. Leise directly by email on March 22, 2024, requesting a phone call.  Ms. Leise copied her

counsel in her response, telling Ms. Morgan she did not feel comfortable scheduling a phone call without her personal attorney.  Ms. Morgan then removed Ms. Leise's counsel from her emailed response, stating that the call was not about invoices.  Ms. Leise copied her counsel once more in her response and again declined to speak without her counsel present.  Ms. Morgan again represented to Ms. Leise that the company would honor the Indemnification Agreement.

74.     Based on these representations, CBCBN continued to represent Ms. Leise and prepared Ms. Leise's Opposition to NikSoft's appeal from the verdict in favor of Ms. Leise.

75.     In reliance on Ms. Morgan's continued representations to CBCBN and to Ms. Leise that Peraton would honor its commitments under the Indemnification Agreement, Ms. Leise's counsel sent an email to Mr. Johnston and Ms. Morgan on April 1, 2024, updating with the March invoice and summarizing the amounts due, including interest, in the amount of $829,161.68.  Ms. Leise's counsel then updated the amounts due through April 30, 2024, including interest, of $868,204.82; and then updated with Mr. Johnston through May 31, 2024, the amount due of $881,449.79, including interest.

76.     To date, months later, Perspecta/Peraton has never responded to the modifications/reductions, and has paid nothing towards any of the invoices from July 2023 through the present.  The logical conclusion is that the non-specific criticisms on March 18, 2024 were a mere pretext -- an attempt to string Ms. Leise along and induce her belief in their fraudulent representations that they would make payment and would honor the terms of the Indemnification Agreement.

77.     In addition to requesting payment of all legal fees and costs under the Indemnification Agreement, including interest, Ms. Leise is further requesting attorneys' fees and costs for having to pursue collection, as the failure and refusal to pay was not made in good faith.

78.     Ms. Leise is further requesting pecuniary and non-pecuniary damages suffered for what she has been suffering through this process and the conduct of Perspecta/Peraton, and also is seeking punitive damages for the conscious disregard for her rights, ill will, spite and malice by Defendants.

## COUNT ONE - BREACH OF CONTRACT
### (Against Defendants Peraton and Perspecta)

79.     The foregoing allegations are incorporated as if realleged herein.

80.     The Indemnification Agreement sets forth the terms of Peraton and Perspecta's obligations to pay Ms. Leise's attorneys' fees and costs incurred during the lawsuit brought against her by NikSoft.

81.     Based on Peraton's and Perspecta's representations, Ms. Leise's employment with Perspecta, her outstanding performance, and her steadily rising trajectory at the company, along with Ms. Leise's inability to pay for the legal fees and costs and Perspecta/Peraton's belief that Ms. Leise was critical to Perspecta's defense of the lawsuit, as well as Perspecta/Peraton's repeated assurances that they would honor the agreement, Ms. Leise had every expectation that the terms of her Indemnification Agreement would be honored.

82.     Between January 31, 2020 and June 30, 2023, Peraton and Perspecta honored the terms of the Indemnification Agreement.

83.     Peraton and Perspecta have breached the Indemnification Agreement by their failure to pay any of CBCBN's invoices since June 30, 2023.

84.     For eight months, Perspecta/Peraton neither claimed that Ms. Leise breached the Indemnification Agreement, nor that the Indemnification Agreement did not apply to her legal fees and costs, and refused to tell Ms. Leise or her counsel they were refusing to pay or why they were refusing to pay.

85.     In fact, Ms. Leise at all times complied with the terms of the Indemnification Agreement, as evidenced by Perspecta and Peraton's payment of the fees and costs through June 30, 2023, but also as evidenced by Perspecta/Peraton's continuing assurances, eight months after ceasing to make payments, of their intention to honor their obligations to Ms. Leise under the Indemnification Agreement.   If Ms. Leise were in breach of the Indemnification Agreement, Perspecta and Peraton would have identified such breach and explained that was the reason for not paying.  Quite the opposite – Perspecta/Peraton continued to represent to Ms. Leise and her counsel that they would honor their obligations under the Indemnification Agreement and continued to remain silent on why they had not yet made payment or when payment may be expected.

86.     As a direct and proximate result of the breaches by Peraton and Perspecta, Ms. Leise has suffered and continues to suffer damages including CBCBN's unpaid attorneys' fees and costs, plus interest on the unpaid amounts.

## COUNT TWO – BAD FAITH DENIAL OF INDEMNITY
### (Against Defendants Peraton and Perspecta)

87.     The foregoing allegations are incorporated as if realleged herein.

88.     As part of Ms. Leise's Indemnification Agreement with Perspecta, Ms. Leise was promised that Peraton and Perspecta would pay her attorneys' fees and costs incurred during the lawsuit brought against her by NikSoft.

89.     Under Va. Code Ann. § 38.2-100, the Indemnification Agreement constitutes insurance because it is a contract "for a consideration. . .  to indemnify another person" and it is a "contract [] of . . . indemnity."

90.     Under Va. Code Ann. § 38.2-209.C, Peraton and Perspecta are insurers of Ms. Leise for her attorneys' fees and costs for the defense of the NikSoft litigation, because they have

chosen to self-insure the obligation of paying Ms. Leise under the Indemnification Agreement.

91. As set forth more specifically above, Defendants Perspecta and Peraton have not acted in good faith in denying or refusing to make payment to Ms. Leise under the Indemnification Agreement by:  a) representing to the court, the jury, Ms. Leise, and her counsel during trial that they were paying for Ms. Leise's defense costs while reaping the benefits of the perception that Perspecta/Peraton were supporting their employee who was discriminated and retaliated against by NikSoft, thus pretending to champion important civil rights and support their employee to the jury and the Court; b) representing to Ms. Leise and her counsel that Perspecta/Peraton would honor their obligations under the Indemnification Agreement while not paying, now for over 10 months; c) refusing to pay, speak with Ms. Leise's counsel, or provide any basis for not paying over an 8-month period while leading Ms. Leise and her counsel to believe they would be paid; d) after 8 months and being faced with the need to commit to honoring their Agreement, providing non-specific criticisms of billing practices by Ms. Leise's counsel – billing practices that had been approved and paid up to July 2023, and where Perspecta/Peraton had never provided any billing guidelines or requirements to Ms. Leise or her counsel, and then when Ms. Leise's counsel immediately addressed the non-specific criticisms and revised the invoices, still not paying and not providing any basis for not paying since then; e) repeatedly representing that Perspecta/Peraton would honor their obligations under the Indemnification Agreement, which confirmed no material breach by Ms. Leise up to the March 2024 promises by Perspecta/Peraton (or Perspecta/Peraton would have provided as a reason for not paying and not honoring the agreement that Ms. Leise was in breach – yet this never happened); f) paying Littler in full, on a timely basis, while not paying Ms. Leise's firm, even though Ms. Leise's counsel was lead counsel, Ms. Leise prevailed completely on her defenses to

NikSoft's claims and Ms. Leise's counsel has provided detailed invoices; g) not paying for the post-trial motions or the appeal work, even though covered by the Indemnification Agreement and no reason has been provided by Perspecta/Peraton for not paying while paying Littler; h) telling Ms. Leise and Ms. Leise's counsel that Perspecta/Peraton agreed to honor their obligations, but not paying and not telling Ms. Leise or her counsel why it has not paid or when payment will be made; and i) if and to the extent that Perspecta/Peraton asserts a material breach of the Indemnification Agreement, failing to explain why it neglected to raise such an assertion for 3.5 years of the litigation, why Mr. Johnston did not request that Ms. Leise's counsel follow a different process when asked in April 2023, why Perspecta/Peraton have not have responded to requests by Ms. Leise and her counsel asking for the reasons for the delay and non-payment, and why, after not paying for 8 months, they told Ms. Leise and her counsel they would be honoring their commitments to Ms. Leise, yet have not done so.

92.    Perspecta and Peraton honored the Indemnification Agreement until July 1, 2023, and then abruptly, without explanation and without substantive communication, completely ceased making any payment.

93.    Perspecta's and Peraton's denial of and refusal and failure to pay Ms. Leise's attorneys' fees and costs are not in good faith, under Va. Code Ann. § 38.2-209.A.

94.    Pursuant to Va. Code Ann. § 38.2-100 and Va. Code Ann. § 38.2-209.A., Ms. Leise is entitled to attorneys' fees promised to her in her Indemnification Agreement with Peraton and Perspecta.

95.    Pursuant to Va. Code Ann. § 38.2-209.A., Ms. Leise is also entitled to her reasonable attorneys' fees and costs incurred in pursuing collection of the amounts due and determining coverage, and for such other fees and costs as the Court determines appropriate.

## COUNT THREE – FRAUD
**(against Defendants Peraton and Perspecta)**

96.     The foregoing allegations are incorporated as if realleged herein.

97.     Ms. Leise is an employee of Perspecta, who with the acquisition of Perspecta by Peraton, became an employee of Peraton in late 2021.  As an employee of Perspecta/Peraton, Ms. Leise has a special relationship with Perspecta/Peraton.

98.     Perspecta/Peraton represented to Ms. Leise and her counsel that they would pay her attorneys' fees and costs in the NikSoft Lawsuit, so long as Ms. Leise remained employed by Perspecta/Peraton.  Thus, this is a condition of Ms. Leise's employment.

99.     In fact, Perspecta/Peraton explicitly represented to the Court, the jury and Ms. Leise at the 2023 NikSoft trial, and did not speak up to the contrary when it was addressed by anyone else, that Perspecta/Peraton was taking full responsibility for Ms. Leise's attorney's fees and costs in defending against NikSoft's claims against Ms. Leise.

100.     At no time did Perspecta/Peraton tell Ms. Leise, Ms. Leise's counsel, or the Court or the jury that it had no intention of paying any of her fees and costs for trial and thereafter.

101.     Meanwhile, Perspecta/Peraton knew it did not intend to pay Ms. Leise's attorneys' fees and costs and knowingly misrepresented the facts to Ms. Leise, Ms. Leise's counsel, the Court and the jury, with a present intent not to pay those fees and costs.

102.     Perspecta/Peraton had special knowledge that it did not intend to pay Ms. Leise's attorneys' fees and costs -- knowledge only it possessed.  Perspecta/Peraton made knowing misrepresentations to Ms. Leise in order to induce her to remain at Perspecta/Peraton and to continue to have her lawyers litigate the NikSoft Lawsuit.

103.     Ms. Leise reasonably relied upon Perspecta/Peraton's misrepresentations and material omissions to her detriment.

104.    But for Perspecta/Peraton's misrepresentations and concealment, Ms. Leise would not have expended the amount of attorneys' fees and costs that she did in the NikSoft Lawsuit and would have taken different actions to try to address the situation and resolve it.  Ms. Leise also would not have suffered the frustration, inconvenience, time, embarrassment, and emotional distress resulting from such misrepresentations and concealment.

105.    Ms. Leise has been and continues to be damaged by Perspecta/Peraton's fraudulent misrepresentations and omissions.

106.    Perspecta/Peraton's conduct was actuated by malice, spite, and ill-will; was willful and wanton; and evinced a conscious disregard for the rights of Ms. Leise.

107.    As a direct and proximate result of the fraudulent misrepresentations and omissions of Perspecta/Peraton, Ms. Leise has suffered damages including payments owed for attorneys' fees and costs and interest on those fees, emotional distress, including inconvenience, time, frustration, and other pecuniary damages, as well as the cost to uncover and pursue the wrongdoing.

108.    Due to the severity of Perspecta/Peraton's conduct, Ms. Leise is also entitled to punitive damages.

**ALTERNATIVE PLEADING**
**COUNT FOUR – CONSTRUCTIVE FRAUD**
**(against Defendants Peraton and Perspecta)**

109.    The foregoing allegations are incorporated as if realleged herein.

110.    Ms. Leise is an employee of Perspecta, who with the acquisition of Perspecta by Peraton, became an employee of Peraton in late 2021.  As an employee of Perspecta/Peraton, Ms. Leise has a special relationship with Perspecta/Peraton.

111.    Perspecta/Peraton represented to Ms. Leise and her counsel that they would pay

her attorneys' fees and costs in the NikSoft Lawsuit, so long as Ms. Leise remained employed by Perspecta/Peraton.  Thus, this is a condition of Ms. Leise's employment.

112.    Ms. Morgan and Mr. Johnston, either through negligence or misunderstanding of their directives from Perspecta/Peraton, represented on multiple occasions that Perspecta/Peraton would honor their agreement with Ms. Leise

113.    In fact, Perspecta/Peraton explicitly represented at the 2023 NikSoft trial to the Court, the jury, Ms. Leise's counsel, and Ms. Leise, and did not speak up to the contrary when it was addressed by anyone else, that Perspecta/Peraton was taking full responsibility for Ms. Leise's attorney's fees and costs in defending against NikSoft's claims against Ms. Leise.

114.    At no time did Perspecta/Peraton tell Ms. Leise, Ms. Leise's counsel, or the Court or the jury that it had no intention of paying any of her fees and costs for trial and thereafter.

115.    Perspecta/Peraton had special knowledge that it did not intend to pay Ms. Leise's attorneys' fees and costs -- knowledge only it possessed.  Perspecta/Peraton made knowing misrepresentations to Ms. Leise in order to induce her to remain at Perspecta/Peraton and to continue to have her CBCBN lawyers litigate the NikSoft Lawsuit.

116.    Ms. Leise reasonably relied upon Perspecta/Peraton's misrepresentations and material omissions, whether innocent or mistaken, to her detriment.

117.    But for Perspecta/Peraton's misrepresentations and concealment, even if innocent and misunderstood, Ms. Leise would not have expended the amount of attorneys' fees and costs that she did in the NikSoft Lawsuit and would have acted differently to try to address the situation and resolve it.  Ms. Leise also would not have suffered the frustration, inconvenience, time, embarrassment, and emotional distress resulting from such misrepresentations and concealment.

118.     Ms. Leise has been and continues to be damaged by Perspecta/Peraton's fraudulent misrepresentations and omissions.

119.     As a direct and proximate result of the fraudulent misrepresentations and omissions of Perspecta/Peraton, Ms. Leise has suffered damages including payments owed for attorneys' fees and costs and interest on those fees, emotional distress, including inconvenience, time, frustration, and other pecuniary damages, as well as the cost to uncover and pursue the wrongdoing, which includes financial, legal and other expenses.

**ALTERNATIVE PLEADING**
**COUNT FIVE – UNJUST ENRICHMENT**
**(against Defendants Peraton and Perspecta)**

120.     The foregoing allegations are incorporated as if realleged herein.

121.     As part of Ms. Leise's Indemnification Agreement with Perspecta, Ms. Leise was promised that Peraton and Perspecta would pay her attorneys' fees and costs incurred during the lawsuit brought against her by NikSoft.

122.     Pursuant to Peraton and Perspecta's promise, Ms. Leise and Ms. Leise's counsel continued to perform exemplary work for the benefit of Perspecta, including defending the NikSoft Lawsuit.

123.     Perspecta and Peraton were aware that Ms. Leise and her counsel were conferring a benefit on them by performing work that was strategically important for Perspecta/Peraton, specifically acting as lead counsel and defending the NikSoft Lawsuit both as against Ms. Leise and by extension and implication, Perspecta and Peraton.

124.     Perspecta and Peraton also benefitted from representing to the Court, the jury, Ms. Leise and Ms. Leise's counsel during the 2023 NikSoft trial that they were paying for Ms. Leise's attorneys' fees and costs, creating the perception by the jury that they were supporting

their employee who could not afford the attorneys' fees and costs, and was being bullied, discriminated and retaliated against by NikSoft, which almost certainly played a significant role in Perspecta's favorable outcome.

125.    Perspecta and Peraton received and accepted the benefits that Ms. Leise and her agents conferred, but then failed to uphold the terms of the Indemnification Agreement.

126.    In the alternative, if either (a) the Indemnification Agreement is deemed invalid or (b) there is found to be a breach of Agreement such that Perspecta/Peraton is excused from performing under the terms of the Indemnification Agreement and paying Ms. Leise's attorney's fees and costs in defending the NikSoft Litigation, Perspecta and Peraton should still be responsible for paying Ms. Leise's fees and costs because it would be unjust for them to reap the benefits of those services while not paying for their value.

127.    Based on Perspecta and Peraton's conduct and the benefits they received, it would be inequitable to allow Perspecta and Peraton to retain the benefit of Ms. Leise's continued employment and the value of Ms. Leise's counsel's representation throughout the trial, appeals and subsequent litigation, without paying Ms. Leise's attorneys' fees and costs in defending the NikSoft lawsuit.

128.    Perspecta and Peraton have been unjustly enriched by the value of Ms. Leise's continued employment with the companies, and the value of Ms. Leise's attorneys' fees and costs in defending the NikSoft Litigation, and should have to pay the value of these services and costs.

**ALTERNATIVE PLEADING**
**COUNT SIX – *QUANTUM MERUIT***
**(against Defendants Peraton and Perspecta)**

129.    The foregoing allegations are incorporated as if realleged herein.

130.    As part of Ms. Leise's Indemnification Agreement with Perspecta, Ms. Leise was promised that Peraton and Perspecta would pay her attorney's fees and costs incurred during the lawsuit brought against her by NikSoft.

131.    Peraton and Perspecta were required to pay Ms. Leise's attorneys' fees and costs, based upon an implied contract to pay the reasonable value of services rendered, because, among other things, they represented to the Court, the jury, Ms. Leise and Ms. Leise's counsel during the 2023 NikSoft trial that they were paying for Ms. Leise's attorneys' fees and costs.

132.    Perspecta and Peraton were aware that Ms. Leise and her counsel were conferring a benefit on the companies by performing work that was strategically important for the company, specifically by remaining employed by Perspecta/Peraton and her counsel acting as lead counsel (at the request of Perspecta/Peraton), and defending the NikSoft lawsuit both as against Ms. Leise and by extension and implication, Perspecta and Peraton.

133.    Perspecta and Peraton also benefitted from representing to the Court, the jury, Ms. Leise and Ms. Leise's counsel that they were paying for Ms. Leise's attorneys' fees and costs, creating the perception by the jury that they were supporting their employee who could not afford the attorneys' fees and costs, and who was being bullied, discriminated and retaliated against by NikSoft, which almost certainly played a significant role in Perspecta's favorable outcome at trial.

134.    Perspecta and Peraton received and accepted the benefits that Ms. Leise and her agents conferred, but then failed to uphold the terms of the Indemnification Agreement.

135.    In the alternative, if either the Indemnification Agreement is deemed invalid or there is found to be a breach of that Agreement such that Perspecta/Peraton is excused from performing under the terms of the Agreement and paying Ms. Leise's attorneys' fees and costs in

defending the NikSoft litigation, Perspecta and Peraton should still be responsible for paying Ms. Leise's fees and costs because they implied they would pay for them, to the Court, the jury, Ms. Leise and Ms. Leise's counsel, up through the filing of this lawsuit, and had a substantial benefit conferred upon them.  Thus, at a minimum Perspecta and Peraton have impliedly agreed that a benefit was conferred and they will be responsible for paying for that benefit.

136.    Based on Perspecta and Peraton's conduct and the benefits they received, it would be inequitable to allow Perspecta and Peraton to retain the benefit of Ms. Leise's continued employment and the value of Ms. Leise's counsel's representation throughout the trial, appeals and subsequent litigation, without paying Ms. Leise's attorneys' fees and costs in defending the NikSoft lawsuit.

137.    By remaining employed by Perspecta, Ms. Leise conferred a benefit on the Defendants.  Ms. Leise's agents also conferred a benefit on Defendants by defending the NikSoft lawsuit.

138.    By agreeing to sign the Indemnification Agreement, continuing Ms. Leise's employment with Perspecta, and accepting the value of Ms. Leise's agents defending the NikSoft Lawsuit, Perspecta and Peraton acknowledged that Ms. Leise was conferring a benefit on them, and that they accepted the benefit under circumstances which would make it inequitable for the Defendants to retain that benefit without paying for its value.

139.    Ms. Leise seeks an award of damages amounting to the reasonable value of any losses because of her remaining employed by Perspecta/Peraton, and the work performed by her counsel in defending the NikSoft lawsuit, including fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jennifer Leise, respectfully requests that this Court enter

judgment in her favor, and against the Defendants, PERATON, INC. and PERSPECTA ENTERPRISE SOLUTIONS, LLC, on the above Counts, and further:

 a) As to Counts One, Two, Three, Four, Five and Six, award compensatory damages against Defendants Peraton and Perspecta, jointly and severally, in an amount to be proven at trial;

 b) As to Counts One, Two, Three, Four, Five and Six, declaratory and associated equitable relief confirming the requirements of the Indemnification Agreement and directing and compelling Defendants to abide by the terms of that Agreement, now and in the future;

 c) As to Count Three, award punitive damages in the amount of three hundred and fifty thousand dollars ($350,000) against Defendants Perspecta and Peraton, jointly and severally;

 d) Award Ms. Leise her attorneys' fees and costs, on each of the above stated Counts as permitted by law; and in addition

 e) Award Ms. Leise such other and further relief as may be appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF JENNIFER LEISE DEMANDS A TRIAL BY JURY ON ALL COUNTS ABOVE.**

June 11, 2024

       */s/ R. Miles Clark*
       R. Miles Clark (VSB #65339)
       ZUCKERMAN SPAEDER LLP
       1800 M Street, Suite 1000
       Washington, DC  20036
       Tel. No: (202) 778-1863
       Fax No: (202) 822-8106
       mclark@zuckerman.com

Cyril V. Smith
*Pro Hac Vice Application* forthcoming
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel No: (410) 949-1145
Fax No: (410) 659-0436
csmith@zuckerman.com

*Counsel for Plaintiff, Jennifer Leise*